ROBERT A. STEWART, APPELLANT, v. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLEE.

FILED DECEMBER 17, 1908.    No. 15,390.

1. Street Railways: NEGLIGENCE. A street railway company is guilty of negligence if it fails to give proper warning of the approach of its cars to a public crossing, or if it operates such cars at an unusual and excessive speed at said point.

2. ———: STREET CROSSINGS: DUTY OF PEDESTRIANS. A pedestrian about to cross the tracks of an electric street railway at a public crossing is not under a duty to observe the same degree of watchfulness and care as when attempting to cross an ordinary steam railway.

3. ———: CONTRIBUTARY NEGLIGENCE: QUESTION FOR JURY. Defendant

maintains a double-track street railway on Tenth street in Omaha. Cars north bound use the eastern track, and those south bound the western one. S., about 8 o'clock in the evening of a winter day, alighted west of the track from a south-bound car at a street crossing. S. was familiar with the manner in which defendant operated its cars on said streets. He waited for an instant, and glanced to the south, until said car had been propelled some 8 or 10 feet. Not seeing or hearing a north-bound car, he crossed the street without further looking or listening, and was run down on the eastern track by a north-bound car. The testimony tended to prove that said car was running at a speed of 20 miles an hour, and that no warning was given of its approach until within about 10 feet of Howard street, and almost at the instant of the collision with plaintiff. *Held,* That it was for the jury, and not the court, to determine whether plaintiff was guilty of contributory negligence.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Reversed.*

*Brome & Burnett,* for appellant.

*John L. Webster* and *W. J. Connell, contra.*

ROOT, C.

Action for damages because of the alleged negligent operation of a street car whereby plaintiff was injured. The trial judge directed a verdict for defendant, and plaintiff appeals.

Plaintiff's place of business, in January, 1904, was located at the southeast corner of the intersection of Tenth and Howard streets in the city of Omaha. Howard street runs east and west, Tenth street north and south. Each street is 100 feet in width, and Tenth street is on an up-grade toward the north. The sidewalks on each side of said streets are 20 feet in width. Defendant maintains and operates a double track street railway on Tenth street. North-bound cars run over the eastern track, and south-bound cars over the western line. The evidence does not accurately show the distance between said tracks, but approximately they are from two to four feet apart. De-

fendant's cars stop at the far crossings for the purpose of receiving and discharging passengers. The Union passenger depot and the Burlington station are located on Tenth street, south of Howard. Several of defendant's car lines converge on Tenth street, and its cars pass to and fro thereon at frequent and irregular intervals, so that any one familiar with the situation at said intersection might reasonably expect a car to pass said point at any time during the day or early evening. Plaintiff had resided in Omaha for some two years preceding the accident, and was familiar with all of the aforementioned facts. It was cold, but clear, the night of the accident, with some snow on the ground, and, with the aid of the lights maintained on the streets and in the adjacent buildings, one could discern objects for a considerable distance. Plaintiff was then about 52 years of age, and in the possession of good eyesight and hearing. Plaintiff had occasion to go to his office about 8 o'clock in the evening, and rode south on defendant's car on Tenth street to said intersection, and got off the car on the west side of the western track and about 8 feet south of the Howard street curb line. Giving plaintiff's own testimony and that of his witnesses the most favorable construction, it appears that, as he stepped down to the street from the car, he placed his hands in his pockets, turned, facing southeast, and looked south to ascertain whether a north-bound car was near at hand; that he remained in that attitude for an instant, during which time the south-bound car had moved about 10 feet; that he did not hear any signal or noise to indicate that a car was coming north on the eastern track, nor did he see such a car. He then walked directly east across the first track, over the space between the two lines of railway, and across the west rail of the east track, at which point he noticed the headlight of a north-bound street car about 20 feet distant, and ru[...] at the rate of 20 miles an hour. At just that insta[...] motorman rang the gong, and the car collided wi[...] Plaintiff was caught on the car fender and ca[...]

shoved some distance, and finally thrown onto the street about the middle of Howard, and the car was stopped so that the rear platform was parallel with his body as it laid in the street. Plaintiff admitted that he did not look south after he started to cross defendant's railway. There is no testimony in the record to corroborate plaintiff concerning the speed of the car, nor any evidence to indicate the distance that a car would move before it could be stopped if it was running at the rate of 20 miles an hour at said point. The record does not disclose any evidence of municipal regulations or rules of the defendant concerning the speed and methods of control of its cars, and but little to show the precautions taken by defendant's employees to warn the public at crossings of the approach of such cars. Plaintiff testified that the motorman in charge of the north-bound car did not ring the gong until the car was very close to him, and in this there is some slight corroboration from one other witness. Plaintiff further appeared to have been somewhat preoccupied at the time with the consideration of business of importance to himself, which he expected to transact at his office that evening. If from the foregoing state of facts we can say, as matter of law, that plaintiff was guilty of contributory negligence, the direction of the learned district judge was right, otherwise the judgment must be reversed.

A pedestrian traveling the streets of a city is not held to the same degree of care and watchfulness in crossing an electric road operated for local passenger traffic as he would be if crossing an ordinary railroad. In a qualified sense the rights of the railway company and that of the footman are equal in the use of the street, but consideration must be given the fact that cars are confined to a track and cannot be turned to either side; that street railway companies are permitted to use the streets for transit and for the purpose of facilitating public and that the speed of their cars cannot be checked y or within the same space of time as can the in- control his movements. The persons in control

of those cars, however, must be charged with notice of the fact that vehicles and footmen, especially at crossings, are constantly crossing the railway, and that there is danger that accidents will occur unless reasonable prudence is exercised in controlling the speed and giving notice of the oncoming of a car, under circumstances like those in the instant case. *Hall v. Ogden City Street R. Co.,* 13 Utah, 243, 57 Am. St. Rep. 726; *Marden v. Portsmouth, K. & Y. Street R. Co.,* 100 Me. 41, 109 Am. St. Rep. 476.

We are not oblivious to the fact that there is a tendency in the decisions of the courts of last resort in many of our sister states not to distinguish between the degree of care necessary to be observed by a footman in crossing the track of an electric street railway in the streets of a city and the caution he must exercise in walking over an ordinary steam railroad at a public crossing. A leading case sustaining that theory of the law, and one that has exerted as much influence as any decision upon said point is *Buzby v. Philadelphia Traction Co.,* 126 Pa. St. 559. In *Omaha Street R. Co. v. Loehneisen,* 40 Neb. 37, that decision was cited by counsel for the defendant, and rejected as unsound in principle by Mr. Commissioner IRVINE, who wrote the opinion of this court therein. The *Loehneisen* case is relied on by plaintiff as ruling the instant one, but there is so much disparity between the facts in the two cases that we consider it important herein only to the extent that it announced the policy of this court not to follow the decisions in Massachusetts and Pennsylvania in cases like the one at bar. We think the better rule is that, although a pedestrian while about to cross a street railway track should generally look and listen for approaching cars, the rule is not inflexible, nor will the courts say as a matter of law that the footman is negligent under all circumstances if he fails to do so, nor ought any court to hold that such exercise of the traveler's faculties must be observed in every case at any particular point in his progress across the tracks. *Lincoln Traction Co. v. Brookover,* 77 Neb.

221, is cited as in point, but in that case plaintiff was driving a covered wagon, and attempted to cross the railway tracks, not at a street crossing, but midway of the block. There was nothing whatever, except the cover of his wagon, to obstruct his view, and it was apparent that he did not exercise the slightest caution for his own safety. In the instant case, giving plaintiff's testimony the utmost credence, he did stop and look and listen until the car upon which he had been riding had moved some distance from him. Ought a court to arbitrarily say just how long plaintiff should have remained in that attitude? We think not. If it can be said that a footman must stop and look and listen until all temporary obstructions between himself and an approaching car are removed, and then must profit by his senses so as to avoid impact with such car, then we can hardly imagine a case wherein defendant would be held liable for maiming a pedestrian. It would seem more consistent with that sound public policy which has regard for life and limb to hold that the foot traveler should be held only to such a degree of caution as may be reasonable under the circumstances of the particular case, and that, if he does thus exercise any care and caution, the sufficiency thereof should be left for the determination of the jury. There is some evidence in the record tending to prove that, at what is termed the Sixteenth street crossing, gongs on cars nearing that point are sounded continuously. Why not at the intersection of Howard and Tenth? The city of Omaha in the exercise of the police power delegated to it by the legislature might well have regulated the operation of street cars and have directed what signals and warnings shall be given as cars approach street intersections. If the city has not exercised this power, then the sufficiency of such warning and the speed at which a street car may be operated so as not to unnecessarily and negligently imperil pedestrians must be determined by the jury under proper instructions of the trial court in each case where those facts may be material and in issue.

We do not hold that, had this case been submitted to a jury and it had found for defendant, we would disturb such a verdict, because it is possible that fair-minded men might infer that plaintiff was guilty of contributory negligence in acting as he did. On the other hand, we further hold that said testimony, uncontradicted and unexplained, might support not only an inference that defendant was guilty of negligence in operating the car at a dangerous rate of speed that collided with plaintiff, and in failing to give sufficient notice of the approach thereof, but that plaintiff had exercised reasonable prudence in his conduct, and was not guilty of contributory negligence. In the state of the record, the issues should have been submitted for the consideration of the jury. *Chicago City R. Co. v. Robinson, Adm'x*, 127 Ill. 9, 11 Am. St. Rep. 87; *Chicago & J. E. R. Co. v. Wanic*, 230 Ill. 530; *Cincinnati Street R. Co. v. Snell*, 54 Ohio St. 197; *Driscoll v. Market Street C. R. Co.*, 97 Cal. 553, 33 Am. St. Rep. 203; *Bass v. Norfolk R. & L. Co.*, 100 Va. 1, 40 S. E. 100; *Spiking v. Consolidated R. & P. Co.*, 33 Utah, 313; *Nebraska Telephone Co. v. Jones*, 60 Neb. 396; *Omaha Street R. Co. v. Mathiesen*, 73 Neb. 820.

It is therefore recommended that the judgment of the district court be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

FAWCETT and CALKINS, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

REVERSED.