OMAHA STREET RAILWAY COMPANY v. NELS LARSON.

FILED DECEMBER 16, 1903. No. 13,226.

1. **Street Railway: NEGLIGENCE.** Negligence of plaintiff in driving across a street railway track without stopping to look and listen, will not excuse the company from its duty to use reasonable diligence to stop its car after discovering the perilous situation, and if its failure to do so, after seeing the danger, directly and immediately causes an injury to him, the company may be held liable for such injury.

2. **Question of Fact for Jury.** Where the evidence is fairly conflicting, the question as to the direct and proximate cause of an alleged injury is one of fact for the determination of the jury.

3. **Experiments: EVIDENCE.** Proof of an experiment, without establish-

ing the fact that the person who made the experiment is com-
petent to do so, and that the apparatus used was of the kind and
in a condition suitable for the experiment, and that it was
honestly and fairly made, is without probative force.

4. **Witness:** COMPETENCY. A witness who sees a moving car, and
possesses a knowledge of time and distance, is competent to ex-
press an opinion as to the rate of speed at which the car was
moving.

5. **Pleading:** EVIDENCE. Evidence of an ordinance of a city, regulat-
ing the rate of speed of street railway cars, is admissible under
a general averment of negligence.

ERROR to the district court for Douglas county: PAUL
JESSEN, JUDGE. *Affirmed.*

*John L. Webster,* for plaintiff in error.

*Frank H. Gaines, James E. Kelby* and *John A. Storey,*
contra.

OLDHAM, C.

This is an action to recover damages alleged to have been
sustained by reason of the negligence of the Omaha Street
Railway Company. The allegations of the petition that
are material to an understanding of this controversy are:

"On September 16, 1899, plaintiff with his horse and
wagon was driving northward on Military avenue in
Omaha and, when about half way between Parker and
Decatur streets in said city on the east side of Military
avenue, desiring to cross to the west side of said Military
avenue, turned his horse to do so, but, as the horse stepped
between the two east rails of defendant's tracks on said
street, a motor car belonging to defendant, propelled by
electricity and running at a dangerously and negligently
high rate of speed, and without any warning to plaintiff,
negligently ran into and struck plaintiff's horse, which
was hitched to the wagon in which plaintiff was riding,
and said horse became entangled in the fender on the front
end of defendant's said motor car.

"Plaintiff says that when defendant's motor car struck

his horse, as aforesaid, the motorman in charge of said car, both seeing and knowing the imminent danger in which plaintiff was placed by the negligence of said defendant, and having the power to stop said car, in absolute disregard of defendant's duty to stop said car and avoid injury to plaintiff, negligently failed even to diminish the speed of said car, but on the contrary said motorman continued to run said car at great speed for about the total distance of a block, pushing, dragging and carrying plaintiff's horse and wagon for the entire distance.

"Plaintiff says that, after defendant's motor car struck his horse as aforesaid, defendant's motorman who was in charge of said car, and who could have stopped said car, and whose duty it was to stop said car, negligently continued to run it at great speed, whereby plaintiff was greatly and seriously injured, without the fault of plaintiff, for, after defendant's motor had, as aforesaid, pushed, dragged and carried plaintiff's said horse and wagon for about 120 feet, plaintiff was forcibly and violently thrown from his wagon, and hurled to the pavement, and was seriously and severely cut, injured and bruised about his head, back, spine and legs, his right leg being so badly broken that it was necessary, in order to save plaintiff's life, to amputate his leg, which was accordingly done, whereby the plaintiff was made to suffer great pain, and physical and mental anguish, and has become a cripple for life, and plaintiff still suffers from the injuries sustained by him in his head and spine."

Defendant answered with a general denial, coupled with a plea of contributory negligence. The reply was a general denial. There was a trial to a jury; verdict for plaintiff; judgment on the verdict, and the defendant brings the case to this court on error.

It will be observed that the charge of negligence in the petition was the failure of the defendant to check the speed of the car and stop it, after the impact of the car with the horse and wagon, and that, by its want of care in this

particular, the injury was occasioned. This is the sole issue of negligence tendered by the petition. At the outset it is insisted by the defendant Street Railway Co. that plaintiff has no right to maintain an action for defendant's failure to use diligence in stopping its car, without showing himself free from negligence in going on the track; that the subsequent negligence, if any, of the company is indivisible from the negligence of Larson in the first instance, and if as alleged by defendant he drove on the track without stopping to look and listen, such contributory negligence on his part constitutes a complete defense to the action. On the question as to whether the defendant used ordinary diligence in attempting to stop the car, after the impact with defendant's horse and wagon, the testimony is fairly conflicting. Plaintiff's evidence tends to show that defendant was drageed about 116 feet after the impact, before the vehicle was overturned and the injury inflicted. Defendant's testimony, on the other hand, tended to show that the injury was inflicted within a few feet of the place of contact, and that reasonable efforts were used to stop the car after the collision.

The question then arises as to whether plaintiff's evidence tends to show an intervening efficient cause, which of itself directly and immediately occasioned the injury. The test is: Was the failure to stop the car a new and independent force, acting in and of itself in causing the injury? If so, it superseded the alleged contributory negligence complained of, so as to make plaintiff's want of proper care in driving on the track remote in the chain of causation. This view is supported by numerous decisions of this court. In *Dailey v. Burlington & M. R. R. Co.,* 58 Neb. 396, the court, speaking through HARRISON, C. J., say:

"It is a well established doctrine that notwithstanding a person may have so placed himself as to be liable to injury, yet if another, after knowledge of the fact, inflict injury because of the failure of the latter to exercise ordinary care to avoid it, the former may recover damages." The same doctrine is announced in *Union P. R. Co. v.*

*Mertes,* 35 Neb. 204; *St. Joseph & G. I. R. Co. v. Hedge,* 44 Neb. 448; *Omaha Street R. Co. v. Martin,* 48 Neb. 65. The petition is framed in accordance with this doctrine and, in our view, states a good cause of action, and whether or not the failure to use diligence in stopping the car after the collision was the direct cause of the injury, was a question of fact to be determined by the jury. *St. Joseph & G. I. R. Co. v. Hedge,* 44 Neb. 448; *Milwaukee & St. P. R. Co. v. Kellog,* 94 U. S. 469; *Purcell v. St. Paul City R. Co.,* 48 Minn. 134; *Railroad Co. v. Kassen,* 49 Ohio St. 230, 16 L. R. A. 674.

It is further urged by the company that the court erred in refusing to permit it to prove the result of an experiment made in stopping this same car at the place of the accident. This experiment was made by one Rollo during the first trial of this case. Rollo was not offered as a witness to prove this, but the company offered to prove the result of this experiment by onlookers. While experiments are sometimes admitted to illustrate a given subject, we are not aware of any rule that permits onlookers to testify as to the result, without laying the foundation and showing that the result of the experiment can be relied on as a substantive fact. This means that, as a foundation for this testimony, it must be shown that the person who makes the experiment is competent to do so; that the apparatus used was of the kind and in the condition suitable for the experiment, and that the experiment was honestly and fairly made. Without these facts established, "the result" is without probative force.

It is claimed that the court erred in permitting plaintiff's witnesses to testify as to the speed the car was running. The objection is based upon the theory that they were incompetent for lack of experience in such matters. We think that a witness who sees a moving car, and possesses a knowledge of time and distance, is competent to express an opinion as to the rate at which the car is moving. In *Detroit & Milwaukee R. Co. v. Van Steinburg,* 17 Mich. 99, Cooley, J., in rendering the opinion, says:

"The point to which the attention of the witnesses was directed was the speed of a passing object. The motion of the train was to be compared to the motion of any other moving thing, with a view of obtaining the judgment of the witness as to its velocity. No question of science was involved, beyond what would have been, had the object been a man or a horse. It was not, therefore, a question for experts. Any intelligent man, who had been accustomed to observe moving objects, would be able to express an opinion of some value upon it, the first time he ever saw a train in motion. The opinion might not be so accurate and reliable as that of one who had been accustomed to observe, with time-piece in hand, the motion of an object of such size and momentum; but this would only go to the weight of the testimony, and not to its admissibility. Any man possessing a knowledge of time and distances would be competent to express an opinion upon the subject." *Chipman v. Union P. R. Co.*, 12 Utah, 68; *Walsh v. Missouri P. R. Co.*, 102 Mo. 582; *Covell v. Wabash R. Co.*, 82 Mo. App. 180, 187.

It is also contended that the trial court erred in admitting in evidence an ordinance of the city of Omaha, limiting the speed of street cars upon certain streets of the city, including Military avenue. This was objected to on two grounds: (1) That it was not pleaded in the petition that the car was being run in violation of the ordinance; (2) that it was immaterial under the issues. As to the first ground of objection, we think that evidence of an ordinance, and its violation, is admissible under a general averment of negligence, where this question is material in a case. The reason is stated in *Faber v. St. Paul, M. & M. R. Co.*, 29 Minn. 465:

"The fact that the rate of speed at which the train was run was prohibited by the municipal law, was competent evidence going to prove negligence, and, being evidence of the fact pleaded, it might be proved, although the existence of the ordinance had not been alleged in the complaint." *Union P. R. Co. v. Rassmussen*, 25 Neb. 810;

*Omaha Street R. Co. v. Duvall,* 40 Neb. 29; *Davis v. Gaurnier,* 45 Ohio St. 470; Watson, Damages for Personal Injuries, sec. 277.

This brings us to the second ground of objection. As a matter of fact, the speed at which the car was running before it struck the wagon has nothing to do with this case, except as a circumstance tending to show a want of proper care in stopping the car. The only act of negligence charged was the failure to check the speed, and stop the car, after the car had struck the horse and wagon, and, for this reason, this evidence had only an indirect bearing on the issues, and in the very able brief of the eminent counsel for the company there is nothing pointed out that suggests prejudice to defendant in its admission. The law does not condemn error in the abstract, but only such as is prejudicial.

The defendant company also complains of instructions numbered 1, 5, 6 and 7 given by the court on its own motion. The principal objection to each of these instructions is that they were drafted upon the theory that the plaintiff could recover, if the motorman was negligent in not stopping the car after it had struck the horse and wagon, notwithstanding the fault of plaintiff in negligently driving upon the track of the company. What has already been said disposes of these objections. We think the instructions as a whole, fairly and fully directed the jury on each material fact at issue, and were as favorable to defendant as the law and evidence warranted.

There was no dispute as to the extent of the injury, nor is there any claim that the damages awarded are excessive.

We find no prejudicial error in the record, and it is therefore recommended that the judgment of the district court be affirmed.

HASTINGS and AMES, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.